UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
———————————————————————————————

WILLIAM CHIARAPPA,

                              Plaintiff,

          -vs-                                    09-CV-607(JTC)

MEYERS, LEVILLIS, ZELINSKI,
PESTULLKA, DURAND, JONES,
JOHN DOE,

                              Defendants.
———————————————————————————————

APPEARANCES:            WESTERN NEW YORK LAW CENTER (MATTHEW
                        A. PARHAM, ESQ., OF COUNSEL), Buffalo, New
                        York, Attorneys for Plaintiff.

                        ERIC T. SCHNEIDERMAN, ATTORNEY GENERAL
                        OF THE STATE OF NEW YORK (BENJAMIN K.
                        AHLSTROM, ESQ., ASSISTANT ATTORNEY
                        GENERAL, OF COUNSEL), Buffalo, New York,
                        Attorneys for Defendants.


**INTRODUCTION**

        Plaintiff brought this action pursuant to 42 U.S.C. § 1983 seeking compensatory

and punitive damages for the alleged violation of his rights under the Eighth

Amendment to the Constitution.  Specifically, he alleges that he was subjected to

excessive force and that the defendants failed to protect him from the use of excessive

force. Currently pending before the court is the defendants' motion for summary

judgment. Dkt. # 121.

**BACKGROUND**

Plaintiff commenced this action on June 30, 2009 with the filing of a *pro se* complaint pursuant to Title 42 U.S.C. § 1983. Dkt. # 1.  By order of the court filed November 6, 2009 (Dkt. # 4), plaintiff's complaint was limited to the following five specific claims:

1) excessive force against defendant Meyers arising from an incident on January 14, 2009;

2) excessive force against defendant Meyers arising from an incident on February 8, 2009;

3) excessive force against defendants Levulis[1] and Durand arising from an incident on February 10, 2009;

4) failure to protect against defendants Zelinski, Pustullka, and Jones arising from the incident of February 10, 2009; and

5) procedural due process against an unserved John Doe defendant hearing officer.

The defendants filed an answer to the complaint on May 6, 2010.  Dkt. # 8.  On October 6, 2010, the parties consented to the jurisdiction of the undersigned pursuant to 28 U.S.C. § 636(c).  Dkt. # 27.  On September 27, 2011, Plaintiff secured the services of an attorney.  Dkt. # 112.

On November 28, 2012, defendants filed this motion for summary judgment, arguing, *inter alia,* that plaintiff failed to exhaust his administrative remedies and failed

---

[1] The name of this defendant is alternatively spelled "Levillis" and "Levulis" in the papers.

to adequately state a constitutional violation.  Dkt. # 121.  Plaintiff conceded that he

failed to exhaust his administrative remedies with respect to the incidents of January

14, 2009 and February 8, 2009 and did not oppose the motion dismissing those claims.

Additionally, he did not oppose the dismissal of his procedural due process claim as

against the unserved John Doe hearing officer. Dkt. #129, p. 1, n.1.  Accordingly, the

only claim remaining for the court's determination on the present motion is plaintiff's

Eighth Amendment excessive force/failure to protect claim arising from the incident of

February 10, 2009.

The court has determined that oral argument is unnecessary.  For the reasons

that follow, defendants' motion for summary judgment is granted and the complaint is

dismissed.


**FACTS**

During the relevant time period, plaintiff was an inmate in the custody of the New

York State Department of Corrections and Community Supervision ("DOCCS").  From

January 14, 2009 until March 9, 2009, plaintiff was housed at the Gowanda

Correctional Facility in Gowanda, New York.  Plaintiff testified in a deposition that on

February 10, 2009, he was told to open his locker for a cell search.  As he reached

down, he was struck in the face by defendant Levulis.  He tried to run out of the cell, but

defendants Zelinski and Pustullka blocked the doorway.  Plaintiff was then told to lie on

the floor.  Dkt. # 124-1 ("Plaintiff's Dep."), p. 32.  While on the floor, plaintiff was

handcuffed from behind.  Defendant Levulis straddled him and struck him about the

face and head while other officers kicked and struck him.  *Id.,* p. 33 -34.  Plaintiff was

then escorted to the infirmary.  He testified that while being escorted, he was held by

defendant Durand and beaten about the head and body.  His head was slammed

against the wall.  *Id.,* pp. 35-36.  Plaintiff claims to have suffered bruising and soreness.

*Id.,* p. 46.

As a result of the incident, plaintiff was served with a misbehavior report charging

him with various violations, including assault, and was moved to the Special Housing

Unit ("SHU").  Within a few days, plaintiff wrote a grievance regarding the beating on

plain lined paper because he had no grievance form.  Dkt. # 127 ("Plaintiff's

Declaration"), ¶ 9.  He placed the grievance on the ledge of his cell with outgoing mail.

*Id.*  Plaintiff theorized that the grievance was intercepted and destroyed, as he received

no response.   *Id.,* ¶ 12.  Plaintiff stated that the officers in the SHU "made various

threatening statements . . . alluding to the fact that [he] tried to file a grievance."  *Id.,* ¶

15.  For example, plaintiff was told he was on the "beat up" list because he had

complained about a corrections officer.  *Id.*  As a result of the "threats and harassment,"

plaintiff was afraid to further pursue his grievance. *Id.,* ¶ 16.

At a hearing on February 17, 2009, plaintiff was found guilty of the disciplinary

charges and was sentenced to six months in the SHU and a loss of privileges and good

time.  Plaintiff's Declaration, ¶ 14.  Plaintiff appealed the decision to the Commissioner

of Corrections on February 17, 2009. Dkt. # 127-10.  In a letter received February 26,

2009, which was dated, apparently mistakenly, March 21, 2009, plaintiff wrote to the

Commissioner "to further address the issue."  Dkt. # 127-1.  He stated that he endured

4

"assaultive behavior," was "mentally distraught," and a weapon had been planted in his cell.  He further stated, "I do not or had not wanted any officer to suffer reprimand and still do not want any reprimand, just my own peace of mind .. . .."  *Id.*

Plaintiff wrote again to the Commissioner in a letter dated February 26, 2009 and received on March 2, 2009, asserting his innocence and asking that the charges be overturned and that he be transferred to another facility.  In a subsequent letter dated February 28, 2009 and received March 5, 2009, plaintiff stated that he was unsure of the appeal process, but again stated that the charges were false and asked the Commissioner to overturn the decision.   Dkt. # 127-1.  In a letter dated March 4, 2009 and received March 10, 2009, plaintiff again asked that the decision be overturned and his privileges restored.  *Id.*  He stated, "I am not looking for any disciplinary action to take place, I just would like my privileges back, to put this behind me . . .."  *Id.*  He also stated that the attitude of the corrections officers in the SHU had changed and that they believed he had been "set up."  *Id.*  His final letter to the Commissioner was dated March 8, 2009 and received March 13, 2009.  Plaintiff reasserted his innocence and stated that he was being transferred from Gowanda.  *Id.*  The decision was affirmed on March 18, 2009. Dkt. # 127-10.

On March 9, 2009, plaintiff was transferred to the Upstate Correctional Facility. Plaintiff's Dep., p. 51; Dkt. # 123-1.  On March 21, 2009, he wrote to DOCCS complaining of the assault and asking for assistance.  The letter was forwarded to the Inspector General's Office.  Dkt. # 127-2.[2]  Two weeks after his transfer, on March 23,

---

[2]  Following an investigation, in a report dated June 9, 2009, the plaintiff's allegation that he was beaten on February 10, 2009 was found to be unsubstantiated. Dkt. # 127-9.

5

Case 1:09-cv-00607-HKS   Document 131   Filed 12/05/13   Page 6 of 16

2009, plaintiff filed a grievance regarding the incident of February 10, 2009. Dkt. # 127-3.  That grievance was rejected as untimely by the Inmate Grievance Program "(IGP)" at Upstate Correctional Facility, but plaintiff was advised that an exception to the time limit could be granted if he submitted proof of mitigating circumstances.  Additionally, plaintiff was advised that he could file a separate grievance regarding the denial of an exception to the time limit.  Dkt. # 127-4.

On March 26, 2009, plaintiff wrote to the IGP to explain the mitigating circumstances of his untimely grievance.  He stated that he "attempted to file two grievances while housed at Gowanda SHU" and could only assume that they were misfiled.  Dkt. # 124-2.  He also stated that an "atmosphere of retribution delayed the filing of" his grievance until he was transferred out of Gowanda.  *Id.*  Additionally, on March 26, 2009, plaintiff submitted a separate grievance regarding the denial of an extension of time.  Dkt. # 127-5.  On April 4, 2009, plaintiff was advised that the IGP supervisor found no merit to his statement of mitigating circumstances and the grievance was not processed.  Dkt. # 127-6.  Plaintiff appealed this decision on April 29, 2009.  Dkt. # 127-7.  The appeal was denied on June 10, 2009.  Dkt. # 127-8.

In support of the motion for summary judgment, defendants submitted a declaration of Molly M. Kennedy, Acting IGP Supervisor at Gowanda Correctional Facility (Dkt. # 122).  The grievance policy in effect at the time plaintiff was incarcerated provided that inmates must submit a grievance within 21 days of the act or occurrence giving rise to the grievance.  *Id.,* ¶ 5.  Ms. Kennedy stated that she reviewed the grievance file for the time period that plaintiff was incarcerated at the Gowanda Correctional Facility and found no grievances filed by the plaintiff.  *Id.,* ¶ 8.  Additionally,

6

Ms. Kennedy stated that inmates in SHU may bypass corrections officers by submitting grievances directly to a grievance program supervisor who makes weekly rounds. *Id.,* ¶ 9.

In further support of the motion, defendants submitted a declaration of defendant Stephen Jones, Sergeant at Gowanda Correctional Facility. Dkt. # 123. Sergeant Jones stated that none of the named defendants were assigned to the Gowanda SHU during the time period plaintiff was housed there, from February 10, 2009 until March 9, 2009. *Id.,* ¶¶ 4,5.

## DISCUSSION

### 1.      Summary Judgment Standard

Rule 56 provides that, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Although the language of this Rule has been amended in recent years, the well-settled standards for considering a motion for summary judgment remain unchanged. *See, e.g., Faulkner v. Arista Records LLC*, 797 F.Supp.2d 299, 311 n. 7 (S.D.N.Y. 2011). Under those standards, the party seeking summary judgment bears the initial burden of establishing that no genuine issue of material fact exists. *Rockland Exposition, Inc. v. Great American Assur. Co.*, 746 F. Supp. 2d 528, 532 (S.D.N.Y. 2010), *aff'd*, 445 F.App'x 387 (2d Cir. 2011). A "genuine issue" exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248 (1986).  A fact is "material" if it "might affect the outcome of the suit under the governing law …."  *Id.*

Once the court determines that the moving party has met its burden, the burden shifts to the opposing party to "come forward with specific facts showing that there is a genuine issue for trial."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted).  The nonmoving party may not rest upon mere conclusory allegations or denials, but must set forth "concrete particulars showing that a trial is needed …."  *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (internal quotation marks and citation omitted) (quoted in *Kaminski v. Anderson*, 792 F. Supp. 2d 657, 662 (W.D.N.Y. 2011)).  In considering whether these respective burdens have been met, the court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments."  *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (internal quotation marks and citation omitted).

The defendants contend that summary judgment should be granted dismissing the complaint as plaintiff failed to exhaust his administrative remedies in accordance with the grievance procedures in place at the Gowanda Correctional Facility in February 2009.  Alternatively, should the court deny the motion based on non-exhaustion, defendants argue that the claim against defendant Jones should be dismissed for plaintiff's failure to show defendant Jones' personal involvement in the assault or his ability to intervene.  Plaintiff contends that he has presented a genuine issue of material fact regarding exhaustion of administrative remedies, precluding summary judgment.

8

2.      **Exhaustion of Administrative Remedies**

The Prisoner Litigation Reform Act of 1995 ("PLRA"), mandates exhaustion by prisoners of all administrative remedies before bringing an action regarding prison conditions. *See* 42 U.S.C. § 1997e(a). Specifically, the PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.* The Supreme Court has held that the PLRA's "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Smart v. Goord* 441 F.Supp.2d 631, 636 (S.D.N.Y. 2006) (quoting *Porter v. Nussle*, 534 U.S. 516, 532 (2002)).  Failure to exhaust is an absolute bar to an inmate's action in federal court; section1997e(a) "requires exhaustion of available administrative remedies before inmate-plaintiffs may bring their federal claims to court at all." *Neal v. Goord*, 267 F.3d 116, 122 (2d Cir. 2001), *overruled on other grounds by Porter v. Nussle,* 534 U.S. 516 (2002).

In New York, formal exhaustion for prison inmates requires compliance with a three-step grievance and appeal procedure.  *See* N.Y. Comp.Codes R. & Regs. tit. 7, § 701.5; *see also Hernandez v. Coffey*, 582 F.3d 303, 305 (2d Cir. 2009).  First a grievance complaint is submitted to the Inmate Grievance Resolution Committee ("IGRC") for an initial determination. The grievance must be submitted within twenty-one calendar days of the alleged occurrence. *Id.* at § 701.5(a).  Next, if the

9

IGRC decision is adverse to the inmate, he has seven calendar days to appeal to the prison superintendent. *Id.* at § 701.5 (c). If dissatisfied with the superintendent's decision, an inmate has another seven calendar days to appeal the superintendent's decision to the Central Office Review Committee ("CORC'). *Id.* at § 701.5(d). Generally, "[a] prisoner has not exhausted his administrative remedies until he goes through all three levels of the grievance procedure." *Hairston v. LaMarche*, 2006 WL 2309592, at *7 (S.D.N.Y. August 10, 2006) (citing cases).

As stated by Ms. Kennedy, the grievance procedure was in place at the Gowanda Correctional Facility and was available to plaintiff. *See* Dkt. # 122, ¶ 4. Pursuant to this policy, an inmate must complete and submit a grievance within 21 days of the act or occurrence giving rise to the grievance. *Id.,* ¶ 5. Ms. Kennedy stated she reviewed the grievance file for the relevant time period and found no grievances filed by the plaintiff between January and March 2009. *Id.,* ¶ 8.

Despite the lack of a record of a grievance filed with regard to the incident of February 10, 2009, the court must credit plaintiff's allegation that he submitted a grievance that was apparently misplaced and to which he received no response. In his letter to the IGP at Upstate Correctional Facility explaining the mitigating circumstances behind his untimely filing of the grievance on March 23, 2009, plaintiff explained that he submitted two grievances while at Gowanda and, simultaneously, that he waited until his transfer away from the "atmosphere of retribution" at Gowanda to file any grievance at all. However, even if plaintiff attempted unsuccessfully to file a grievance in a timely manner, the lack of a response does not relieve him of the requirement to timely appeal

the grievance through all three steps of the grievance process.  Here, plaintiff does not

contend that he timely pursued his grievance through the appeal process.  After

submitting a grievance that was never filed or responded to, he admits he did nothing

until March 23, 2009, when he filed an untimely grievance at Upstate Correctional

Facility.  Plaintiff thus failed to exhaust his administrative remedies with regard to the

incident of February 10, 2009.  *See Belile v. Griffin*, 2013 WL 1776086, at *3–4, 7

(N.D.N.Y. Feb. 12, 2013), *Report and Recommendation adopted by,* 2013 WL 1291720

(N.D.N.Y. Mar. 27, 2013) (plaintiff failed to exhaust his administrative remedies where

he alleged he filed two grievances by placing the grievances in his meal slot to be filed

by corrections officers, but claimed they were intercepted or discarded, never received

a determination on the grievances, and failed to appeal to the superintendent of the

facility or CORC); *Atkins v. Menard*, 2012 WL 4026840, at *4 (N.D.N.Y. Sept. 12, 2012)

(plaintiff failed to exhaust where he had the "ability, and indeed the duty, to appeal the

IGRC's nonresponse (to his grievance) to the next level, including CORC, to complete

the grievance process."); *Murray v. Palmer*, 2008 WL 2522324, at * 16, 18 (N.D.N.Y.

June 20, 2008) (finding that in order to exhaust available administrative remedies with

regard to his grievance, plaintiff had to file an appeal with the superintendent from the

IGRC's nonresponse, which included a failure to acknowledge the receipt of a

grievance and assign it a number); *Williams v. Hupkowicz*, 2007 WL 1774876, at *4

(W.D.N.Y. June 18, 2007) ("Even assuming that an inmate received no timely official

response as contemplated by the regulations to a grievance at any stage in the inmate

grievance process, the inmate could nevertheless appeal such grievance to the next

level, and the failure to do so constitutes a failure to exhaust his administrative

11

remedies as required under the PLRA.") (citation omitted); *Midalgo v. Bass*, 2006 WL 2795332, at *6 (N.D.N.Y. Sept. 26, 2006) (observing that plaintiff was required to seek an appeal to the superintendent, even though he never received a response to his grievance and was not assigned a grievance number); *Veloz v. New York*, 339 F.Supp.2d 505, 516 (S.D.N.Y. 2004) ("[P]laintiff's allegation that these particular grievances were misplaced or destroyed by correctional officers ultimately does not relieve him of the requirement to appeal these claims to the next level once it became clear to him that a response to his initial filing was not forthcoming."), *aff'd*, 178 F. App'x 39 (2d Cir. 2006).  Accepting the truth of plaintiff's allegation, that he attempted to submit a timely grievance regarding the incident of February 10, 2009, he failed to timely pursue an appeal of that grievance and, accordingly, failed to exhaust his administrative remedies as required under the PLRA.

In response to the motion, plaintiff argues that administrative remedies were unavailable to him at Gowanda, that the defendants are estopped from asserting the defense of non-exhaustion, or that special circumstances should excuse his failure to exhaust.  "When a plaintiff seeks to counter a contention that he has failed to exhaust administrative remedies under the PLRA, ... the proper inquiry is whether: (1) administrative remedies were in fact available to the prisoner; (2) ... the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense; and (3) special circumstances have been plausibly alleged that justify the prisoner's failure to comply with administrative procedural requirements."  *Chavis v. Goord*, 333 F. App'x 641, 643 (2d Cir. 2009) (citing *Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004) (internal quotation marks omitted)).

12

Unavailability of administrative remedies is governed by an objective test—"that is, would a similarly situated individual of ordinary firmness have deemed [grievance procedures] available." *Hemphill*, 380 F.3d at 688 (internal quotation marks omitted). Here, plaintiff has offered no proof that he was prevented from utilizing the grievance procedure that was in place at the Gowanda Correctional Facility.  There is no question that plaintiff was provided writing implements, as he has stated that he prepared a grievance on plain lined paper.  It is also apparent that his outgoing mail was collected and properly forwarded, as he submitted a timely appeal of his disciplinary hearing disposition and wrote five letters to the DOCCS Commissioner complaining that he was innocent of the charges related to the incident of February 10, 2009.  In those letters, plaintiff repeatedly stated that he did not seek disciplinary action against the officers at Gowanda, but simply wanted his disciplinary charges overturned and his privileges restored.  Additionally, plaintiff indicated in his letters to the Commissioner that the officers in the Gowanda SHU believed that plaintiff had been "set up" on February 10, 2009.  Dkt. # 127-1. This is plainly inconsistent with plaintiff's position on the motion that he was threatened by the SHU officers and afraid to pursue an appeal of his grievance regarding the alleged beating of February 10, 2009.  Accordingly, the record indicates that administrative remedies were available to plaintiff, but that he chose not to pursue them.

An inmate may invoke estoppel in the PLRA context where the "defendants took affirmative action to prevent him from availing himself of grievance procedures." *Amador v. Andrews*, 655 F.3d 89, 103 (2d Cir. 2011) (internal quotation marks omitted). Generally, defendants cannot be estopped from asserting a non-exhaustion affirmative defense based upon the actions or inaction of other individuals. *Murray v. Palmer*,

2010 WL 1235591, at *5 & n. 26 (collecting cases); *McCloud v. Tureglio*, 2008 WL 1772305, at *12 (N.D.N.Y. Apr. 15, 2008) ("None of those documents allege facts plausibly suggesting that Defendant's own actions inhibited Plaintiff's exhaustion of remedies during the time in question.").  Defendants have submitted the affidavit of defendant Jones, who stated that none of the named defendants were assigned to the Gowanda SHU during the time period that plaintiff was housed there following the incident of February 10, 2009.  Dkt. # 123, ¶¶ 4, 5.  Plaintiff does not claim, and has submitted no evidence showing, that any of the named defendants threatened or prevented him from exhausting his administrative remedies with regard to the alleged assault.  Accordingly, the defendants are not estopped from raising the defense of failure to exhaust administrative remedies.

Finally, the Second Circuit has recognized that "there are certain 'special circumstances' in which, though administrative remedies may have been available and though the government may not have been estopped from asserting the affirmative defense of non-exhaustion, the prisoner's failure to comply with administrative procedural requirements may nevertheless have been justified."  *Giano v. Goord*, 380 F.3d 670, 676 (2d Cir. 2004).  The inquiry with respect to special circumstances is the same as that for unavailability—namely, "whether a similarly situated individual of ordinary firmness would have been deterred from following regular procedures." *Hemphill*, 380 F.3d at 690 (internal citation and quotation marks omitted).  "Special circumstances" have been found to include an incorrect but reasonable interpretation of DOCCS regulations, or the failure to file a grievance in the precise manner prescribed by DOCCS as a result of threats. *See, e.g.*, *Giano v. Goord*, 380 F.3d at 675–76 (failure to exhaust was justified where plaintiff inmate's interpretation of regulations was

14

reasonable and prison official threatened inmate).  The issue of whether special

circumstances justify a prisoner's failure to comply with administrative procedural

requirements "must be determined by looking at the circumstances which might

understandably lead ... uncounselled prisoners to fail to grieve in the normally required

way." *Giano*, 380 F.3d at 678.

The court credits plaintiff's allegation that he failed to timely pursue the grievance

through the established grievance process while at Gowanda because he was told by

the SHU guards that he was on the "beat up" list for complaining about a corrections

officer.  Despite this alleged threat, however, plaintiff promptly appealed his disciplinary

disposition and sent five letters to the Commissioner of DOCCS in a period of

approximately two weeks, asserting his innocence, naming the officers involved,

complaining of his loss of privileges, and maintaining that he did not wish to see any

corrections officer reprimanded or disciplined.  This indicates that plaintiff was not

deterred from accessing the facility's mechanisms for redressing inmate concerns and

that plaintiff's failure to exhaust his administrative remedies had nothing to do with

alleged threats from the guards at the Gowanda SHU.  Additionally, plaintiff did not

promptly file the grievance following his transfer from Gowanda, but waited two full

weeks after his arrival at Upstate Correctional Facility to file a formal grievance

regarding the alleged beating on February 10, 2009.  This further undercuts plaintiff's

argument that he could not pursue a grievance until he was free of the "atmosphere of

retribution" at Gowanda.  "[N]othing in the record, other than the bare allegation of a

purported threat, suggests that 'a similarly situated individual of ordinary firmness would

have been deterred from following regular procedures.'" *See Black v. Fischer,* 2013 WL

1314940, *9 (S.D.N.Y. March 29, 2013) (quoting *Hemphill*, 380 F.3d at 690 (internal

citation and quotation marks omitted)) (despite alleged threat, inmate freely complained to superintendent and outside DOCCS personnel).  The court thus concludes that no rational fact finder could determine that plaintiff was deterred from exhausting his administrative remedies by the actions of the defendants or any other DOCCS employee.  Accordingly, plaintiff's failure to exhaust his administrative remedies in compliance with the PLRA does not fall within any of the *Hemphill* exceptions and the case must be dismissed.

## CONCLUSION

The defendants' motion for summary judgment (Dkt. # 121) is granted and the complaint is dismissed.  The Clerk of the Court is directed to close the case.


**SO ORDERED.**


DATED:      Buffalo, New York
            December 5, 2013

                                    **  s/ H. Kenneth Schroeder, Jr.  **
                                    **H. KENNETH SCHROEDER, JR.**
                                    **United States Magistrate Judge**